PROGRESSIVE MICHIGAN INSURANCE COMPANY v SMITH

Docket No. 287505. Submitted December 1, 2009, at Grand Rapids. Decided March 16, 2010, at 9:05 a.m.

Progressive Michigan Insurance Company brought an action in the Kent Circuit Court, Dennis B. Leiber, J., against William Smith, Sheri Harris, and Scott and Andrea Mihelsic, seeking a declaration regarding its obligations under a motor vehicle insurance policy issued to Harris to indemnify Smith after a default judgment was entered against Smith in an action by the Mihelsics for injuries sustained in a motor vehicle accident that occurred when a truck driven by Smith crossed the centerline of the road and struck the Mihelsics' vehicle. Smith had added his friend Harris to the title of the truck when he purchased it because he had a suspended driver's license and was unable to obtain license plates and insurance. Harris obtained the insurance and Smith paid for it. A form signed by Harris listed Smith as an excluded driver and the declarations page of the policy and the certificate of insurance also listed Smith as an excluded driver. The trial court allowed Pioneer State Mutual Insurance Company to intervene as a defendant and granted Progressive's motion for summary disposition that was based on the named driver exclusion. The Mihelsics appealed, alleging that Progressive failed to use the required statutory language in some of the documents containing the named driver exclusion and, therefore, the exclusion was not valid.

In a lead opinion by Judge BANDSTRA and an opinion by Judge MURRAY concurring in the reasoning and the result of the lead opinion, the Court of Appeals held:

The named driver exclusion in the policy is invalid because it did not strictly comply with the wording of the statutorily required warning regarding the named driver exclusion. The trial court erred by granting Progressive's motion for summary disposition and denying the Mihelsics' cross-motion for summary disposition. The judgment of the trial court must be reversed and the case must be remanded to the trial court for further proceedings.

Judge BANDSTRA stated in the lead opinion that to satisfy the notice requirement of MCL 500.3009(2) the warning must appear on the certificate of insurance and at least one of the following, the

face of the policy, the declaration page, or the certificate of the policy. The trial court correctly concluded that the requirements of § 3009(2) were not satisfied merely by inclusion of the correctly worded warning on the declaration page. The statute provides the warning that must be provided verbatim by insurers. Progressive failed to provide the statutorily required notice verbatim.

Judge MURRAY, concurring, wrote separately to point out that MCL 500.3009(2) unambiguously requires the named driver exclusion to be provided in the exact words that the Legislature mandated. The absurd result doctrine of statutory construction employed by the dissent cannot be used to modify an unambiguous statute. The statute's unambiguous commands must be enforced.

Reversed and remanded.

Judge MARKEY, dissenting, would hold that Progressive complied with the statutory notice requirement when it substituted the term "responsible" for the term "liable" in the named driver exclusion on some of the insurance documents. Progressive accomplished the intent of the Legislature in enacting § 3009(2) notices by substituting the totally synonymous word "responsible" for the word "liable." Although it is the Court's function to apply the law as written, on rare occasions there may arise situations where following this philosophy with myopic rigidity effects not only a complete thwarting of the Legislature's intent but also a profoundly unfair and inequitable result. The narrow facts of this case and the majority's treatment of them create precisely that situation. Upholding the exclusion under the facts of this case would fulfill the Legislature's intent. The judgment of the trial court should be affirmed.

INSURANCE — MOTOR VEHICLE LIABILITY COVERAGE — NAMED EXCLUDED OPERA-
    TORS — NOTICE OF EXCLUDED OPERATORS.

The Insurance Code provides that, if authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named excluded person; the warning that must be provided with regard to a named excluded person must be verbatim the warning provided in MCL 500.3009(2) and must appear on the certificate of insurance and at least one of the following: the face of the policy, the declaration page, or the certificate of the policy.

*Bensinger, Cotant & Menkes, P.C.* (by *Kerr L. Moyer*), for Progressive Michigan Insurance Company.

*RizzoBryan, P.C.* (by *Devin R. Day*), for Scott and Andrea Mihelsic.

Before: MARKEY, P.J., and BANDSTRA and MURRAY, JJ.

BANDSTRA, J. In this matter of first impression, I would conclude that the warning notice requirement of MCL 500.3009(2) must be enforced as written. Thus, the named driver exclusion in the policy of insurance at issue here is invalid because it does not strictly comply with the statute.

BACKGROUND FACTS AND PROCEEDINGS BELOW

Defendants-appellants, Scott and Andrea Mihelsic, were injured in an automobile accident when a truck driven by defendant William Smith crossed the centerline of the road and struck their vehicle. When Smith purchased the truck, he did not have a driver's license because he had too many points on his record. In order to obtain license plates and insurance, he added his friend, defendant Sheri Harris, to the title. Harris obtained insurance with appellee, Progressive Michigan Insurance Company, and Smith paid for it. A form signed by Harris lists Smith as an excluded driver. The declaration page of the insurance policy also lists him as an excluded driver, as does the certificate of insurance.

Appellants brought an action against Smith, and a default was entered against him on October 4, 2006. Progressive then brought this declaratory judgment action to determine its liability to indemnify Smith and moved for summary disposition pursuant to MCR 2.116(C)(10) on the basis of the named driver exclusion. Appellants responded and filed a countermotion for summary disposition. They argued, in part, that appellee had failed to use the required statutory language for

exclusion of a named driver on the documents showing insurance coverage. Disagreeing, the trial court granted appellee's motion for summary disposition and denied appellants' cross-motion, leading to this appeal.

ANALYSIS

Summary disposition may be granted under MCR 2.116(C)(10) when "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." We review a trial court's decision on a motion for summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Further, statutory interpretation is a question of law that is reviewed de novo. *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 12; 773 NW2d 243 (2009).

" 'The primary goal of statutory interpretation is to give effect to the intent of the Legislature.' Fundamentally, '[t]his task begins by examining the language of the statute itself.' " *Id*. at 13 (citations omitted). Clear and unambiguous statutory language must be enforced as written. *Id*. at 12.

MCL 500.3009(2) states:

> If authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance: Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable.

In this case, the warning on the declaration page of plaintiff's policy is identical to the portion of this

statutory provision following the colon. However, in the warning provided both on the face of the policy and on the certificate of insurance, the last word is "responsible" instead of "liable."[1]

Appellee argues, first, that the warning on the declaration page alone is adequate. According to appellee, the "and" in the second sentence of MCL 500.3009(2) links the "certificate of the policy" and the "certificate of insurance," meaning that placing the warning on both of these documents is an alternative to placing it on either "the face of the policy or the declaration page." Thus, appellee argues that, because warning language identical to the statute is found on the declaration page, the statutory notice provision was satisfied notwithstanding any failure of the language used on the other documents.

I disagree. Appellee's argument disregards the grammatical structure of the statute. The sentence, "Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance," contains two parallel clauses after the verb "is": "on the face . . ." and "on the certificate of insurance . . . ." The first clause contains three alternatives, separated from each other by "or." The first and second clauses are joined by "and." Therefore, to satisfy the statute, the warning must appear on at least one of the three alternatives mentioned in the first clause *and* on the certificate of insurance. Appellee's interpretation that a correctly worded warning on the declaration page alone satisfies the statute is inconsistent with the grammatical structure of the statute. The trial court correctly concluded that the requirements of § 3009(2)

---

[1] The parties do not mention on appeal what warning, if any, appeared on the certificate of the policy.

were not satisfied merely by the correctly worded warning on the declaration page.

Nonetheless, the trial court determined that the excluded driver provision was valid under the statute, explaining:

> The fact that the warning on the certificate of insurance contained the word "responsible" rather than the word "liable" does not defeat the named driver exclusion election. If the Legislature intended that the warning must be taken verbatim from the statute and placed on the enumerated documents in order to be effective, it would have been simple to indicate as much in the statute itself. Absent such a requirement, this Court finds that Plaintiff complied with the mandates of MCL 500.3009(2) in that it received authorization from the insured; placed a suitable warning on the declaration page of the policy and on the certificate of insurance.

In essence, the trial court concluded that substantial compliance with the statute was sufficient; it was enough that a "suitable" warning was provided. I disagree.

Although there is no binding authority that states that "strict compliance" with § 3009(2) is necessary,[2] the statute itself indicates that failure to follow its requirements results in the invalidity of the exclusion. Again § 3009(2) provides:

> If authorized by the insured, automobile liability or motor vehicle liability coverage may be excluded when a vehicle is operated by a named person. Such exclusion shall not be valid unless the following notice is on the face of the policy or the declaration page or certificate of the policy and on the certificate of insurance: Warning—when a named excluded person operates a vehicle all liability coverage is void—no one is insured. Owners of the vehicle and others

---

[2] But see *Detroit Auto Inter-Ins Exch v Felder*, 94 Mich App 40, 44; 287 NW2d 364 (1979).

legally responsible for the acts of the named excluded person remain fully personally liable.

The Legislature did not merely set forth the substance of the required warning. Instead, the statute mandates use of "the following notice," which notice is explicitly provided for insurers to use verbatim.[3] Further, the Legislature did not merely state that this notice is required, without specifying the effect of noncompliance. If the required warning notice is not provided, the named person "exclusion shall not be valid." The statute could not be clearer.

In this case, the verbatim statutorily mandated warning notice does not appear, as required, on the certificate of insurance.[4] Accordingly, the mandate of the statute is clear: the named driver exclusion "shall not be valid . . . ." The trial court erred by granting appellee's motion for summary disposition and by denying appellants' cross-motion.[5] I would reverse and remand for further proceedings consistent with this opinion. I would not retain jurisdiction.

Having fully prevailed on appeal, appellants should be allowed to tax costs. MCR 7.219.

MURRAY, J. (*concurring*). Both the lead opinion and Judge MARKEY's dissent, though coming to opposite conclusions, are thoughtful and well-written. The only disagreement between the lead opinion and the dissent-

---

[3] As noted earlier, appellee did use the prescribed language on the policy's declaration page.

[4] Whether the meaning of the language used by appellee conveys the same meaning as the statutorily mandated warning is immaterial. The statute does not require "the following notice or a notice of similar effect" or otherwise allow for any deviation from its terms.

[5] In light of this determination, we need not consider appellants' other arguments on appeal.

ing opinion is whether we enforce MCL 500.3009(2) as it was written, regardless of the fact that the result in this case is no doubt unfortunate. As briefly explained below, in my view our judicial duty is to enforce that indisputably unambiguous statute as written, and we cannot under Michigan law make exceptions to that rule. Thus, I join both the reasoning and the result of the lead opinion.

The essence of the dissent is that although our judicial duty is to *almost always* apply the statute's unambiguous words to the facts presented, "on rare occasion[s]" like this case, "where following this philosophy with myopic rigidity effects not only a complete thwarting of the Legislature's intent but also a profoundly unfair and inequitable result," we should disregard that judicial duty. With all due respect, for several reasons I do not believe we can apply this rationale, which is essentially the "absurd result" doctrine of statutory construction, to this case.

First, the "absurd result" doctrine cannot be used to essentially modify an unambiguous statute, and no one has argued that MCL 500.3009(2) is anything but unambiguous. See *People v McIntire*, 461 Mich 147, 155 n 2; 599 NW2d 102 (1999), and *Toaz v Dep't of Treasury*, 280 Mich App 457, 462; 760 NW2d 325 (2008), citing *Cairns v East Lansing*, 275 Mich App 102, 118; 738 NW2d 246 (2007).[1] Second, even if the Supreme Court

---

[1] *Detroit Int'l Bridge Co v Commodities Export Co*, 279 Mich App 662, 674-675; 760 NW2d 565 (2008), decided just three weeks after *Toaz*, concluded that a majority of the Supreme Court (in separate opinions) in *Cameron v Auto Club Ins Ass'n*, 476 Mich 55; 718 NW2d 784 (2006), had rejected *McIntire*'s rejection of the absurd result doctrine. However, as the majority opinion by Chief Justice TAYLOR in *Cameron* recognizes, Chief Justice TAYLOR and Justices CORRIGAN, YOUNG, and MARKMAN all agreed that any discussion of the "absurd result" doctrine would be dicta because the doctrine was not implicated in that case. *Cameron*, 476 Mich at 66 (opinion

recognized that doctrine, there is no reason to invoke it in this case. It is certainly reasonable to conclude that a rational legislator would have believed that, when an insurance contract did not contain the *exact* words the legislature actually mandated be used in those contracts, a court would rule the contract was invalid, just as the legislature mandated. See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 80-82; 718 NW2d 784 (2006) (MARKMAN, J., concurring). Proof positive of this conclusion is the clear directive in the language, the lack of *any* "wiggle room" in the language, and the Legislature's explicit remedy of invalidation if the statutory notice language is not used. Indeed, I would posit that any insurance company attorney reading this statute—just like the legislators who passed the statute—would expect a court to invalidate an insurance provision that did not contain the required language.

Finally, it is difficult to discern *when* a court should ignore language to avoid "unfair and unjust" results. The dissent reasonably believes that "responsible" and "liable" are close enough to ignore the lack of compliance in this case, but what about the *next* case inevitably coming down the appellate pipeline? Are we left to pure judicial discretion as to which words must be enforced, with the answer coming down to the palatability of the result attained under the facts? I do not believe that is how the judicial branch should function when addressing unambiguous statutes. And, although enforcement of these "strict rules . . . can unfortunately . . . produce some [outrageous] outcomes," *id.* at 64, that is a product of the overall legislation chosen by the Legislature, and we must enforce the unambiguous commands of that legislation.

---

of the Court); *id.* at 80-82 (MARKMAN, J., concurring). Thus, *Cameron* cannot be read as overturning *McIntire*'s rejection of the absurd result doctrine.

MARKEY, P.J. (*dissenting*). I respectfully dissent because I disagree with the majority's analysis of whether plaintiff complied with the statutory warning notice requirement of MCL 500.3009(2). I believe it did; consequently, I would affirm the trial court.

Before I proceed further, I must note that I do agree with the majority's rendition of the facts of this case and of the existing caselaw, including that this is a case of first impression. I also note that, like my colleagues, I too strongly adhere to the philosophy that it is this Court's function to apply the law as plainly written. It is not our job to modify, amend, or read into a statute something that is not there; such legislating from the bench is simply improper. Legislating belongs to the Legislature.

Nonetheless, on rare occasion there may arise a situation where following this philosophy with myopic rigidity effects not only a complete thwarting of the Legislature's intent but also a profoundly unfair and inequitable result. I believe that the narrow facts of this case and the majority's treatment of them create precisely that situation.

The purpose of MCL 500.3009(2) is to allow an insurer to exclude certain drivers from liability coverage. Clearly, that was the case here, and both the named insured, Sheri Harris, and the excluded driver, William Smith, as well as the insurer, Progressive Michigan Insurance Company, all understood and accepted that Mr. Smith was an excluded driver under the insurance policy issued to Ms. Harris.[1] This point is particularly important because Mr. Smith had such an atrocious driving record that he was no longer able to legally

---

[1] In his deposition, Mr. Smith stated that he "definitely" knew he should not have been driving on the day of the accident. Ironically, Ms. Harris was a passenger in the truck at the time of the accident.

drive. Still, he purchased a vehicle, and in order to obtain license plates and insurance, he added his friend and the named insured, Ms. Harris, to the title. Insurance documents list them as part of the same household. Harris obtained the insurance with plaintiff, and Smith paid for it. A form with Ms. Harris' signature lists Mr. Smith as an excluded driver. Plaintiff's declarations page and its insurance policy list him as an excluded driver, as do the certificates of insurance. So, defendants Smith and Harris had four separate insurance documents explicitly advising and warning that Smith was an excluded driver.

Moreover, there appears to be *no dispute* that both Mr. Smith and Ms. Harris knew that Mr. Smith was a named excluded driver under this insurance policy. In fact, one cannot read this record and not completely recognize that both Mr. Smith and Ms. Harris knew that Mr. Smith was not insurable even before he purchased the truck he was driving when the accident occurred. And, Smith and Harris knew what they needed to do to obtain insurance covering the vehicle. Together, they set about to accomplish that task. Indeed, considering it was Smith's truck, and that he obviously drove it, one can only conclude that Smith and Harris colluded to obtain insurance from Progressive without concern that Smith was not supposed to drive the vehicle. So, under these facts, there is not the slightest concern that the *intent* that the Legislature had in enacting § 3009(2) was completely accomplished.

It is also true that Progressive would never have issued an insurance policy to Ms. Harris covering the vehicle if it knew that Mr. Smith would drive it. Progressive, in taking the application for insurance from Ms. Harris and obtaining the driver exclusion form from her pertaining to Mr. Smith, required that

information and her implicit promise that Mr. Smith
would not drive the vehicle when it calculated the fair
and appropriate insurance premiums for the vehicle.
Insurance companies must have some knowledge in
order to compute premiums, and it is not fair, practical,
or reasonable to expect insurance companies to either
act in the dark or be required to assume that their
named insureds are lying. Quite the contrary, an insur-
ance company must be allowed to generally accept as
true and accurate whatever information its named
insured gives to it when completing an insurance appli-
cation.

MCL 500.3009(2) mandates that its warning notice of
the effect of the named driver exclusion be placed on
various documents. Here, again, no one disputes that
Progressive placed the required warning notice on the
declarations page, on the insurance policy itself, and on
the certificates of insurance. There is only one very
narrow issue: whether Progressive's substitution of one
word, "liable," for another word, "responsible," in one
sentence renders the notice requirement completely
null and void and thereby vitiates the named driver
exclusion. The majority believes that Progressive's sub-
stitution of "responsible" for the word "liable" does just
that. Consequently, under the majority's analysis, Pro-
gressive bears the full responsibility for an accident
caused by a driver that everyone involved, i.e. the
insurance company, the named insured, and the ex-
cluded driver, knew that the consequence of his driving
and causing an accident would be no insurance cover-
age.

The specific language of MCL 500.3009(2) is, again:

> Warning—when a named excluded person operates a
> vehicle all liability coverage is void—no one is insured.

Owners of the vehicle and others legally responsible for the acts of the named excluded person remain fully personally liable.

In this case, the warning on the declarations page of plaintiff's policy mirrors verbatim the statutory language; however, the warning on both the face of the policy itself and on the certificates of insurance contains the word "responsible" instead of "liable" as the very last word in the warning. But the certificates of insurance themselves go above and beyond providing the statutory notice. On their reverse sides, they also state:

**Named Excluded Driver:**

If this vehicle is driven by the person named below, residual liability insurance does not apply and the vehicle will be considered uninsured.

WILLIAM SMITH

According to Black's Law Dictionary (8th ed), the word "liable" means both "[r]esponsible or answerable in law; legally obligated," and "subject to or likely to incur (a fine, penalty, etc.)." The word "responsible" means "[l]iable; legally accountable or answerable." Black's Law Dictionary (6th ed).

Patently, the words "liable" and "responsible" are completely and totally synonymous. See *In re Beck*, 287 Mich App 400, 403; 788 NW2d 697 (2010), wherein this Court determined that "[a] 'responsibility' . . . is a 'liability.' " (Quoting Black's Law Dictionary [7th ed].) Indeed, it could even be surmised or argued that Progressive used the word "responsible" instead of "liable" in two of its required notices because it is more readily comprehendible. The average lay person is very unlikely to misunderstand what it means to be "fully personally responsible." On the other hand, the word "liable" has more legal sounding connotations. So,

should even those of us who strongly believe that statutes must be strictly complied with go so far as to vitiate a named driver exclusion because of the use of one synonym under the unequivocal facts of this case? Must we as strict constructionists abandon "common sense" and render a decision not only remarkably hyper-technical legally but also profoundly unjust and jarring to what I will presume to say is the average person's sense of justice and fair play? I think not.

I believe that Progressive Michigan Insurance Company complied with the mandate of § 3009(2) and the named driver exclusion of Progressive's policy remained fully effective. It is our responsibility to give effect to the interpretation that accomplishes the statute's purpose. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996). The choice of "liable" versus "responsible" does not in any way frustrate the Legislature's intent to ensure that strong warning be provided as to the import of an excluded driver provision. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). Here, upholding the exclusion where the warning notice substitutes one word for its synonym fulfills the Legislature's intent. It is also fair to assume that the Progressive policy

was approved by the Commissioner of [the Office of Financial and Insurance Regulation]. MCL 500.2236 requires that basic insurance policy forms be filed with the Commissioner's office and be approved by the Commissioner before the policy may be issued by the insurance company. See also, *Rory v Continental Insurance Company*, 473 Mich 457, 474; 703 NW2d 23 (2005). Subparagraph (5) of this statute provides:

"(5) Upon written notice to the insurer, <u>the commissioner may disapprove, withdraw approval or prohibit the</u>

issuance, advertising, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy. The notice shall specify the objectionable provisions or conditions and state the reasons for the commissioner's decision. If the form is legally in use by the insurer in this state, the notice shall give the effective date of the commissioner's disapproval, which shall not be less than 30 days subsequent to the mailing or delivery of the notice to the insurer. If the form is not legally in use, then disapproval shall be effective immediately." (Emphasis added.)

By implication the Commissioner of Insurance has determined that Progressive's notice language does not unreasonably or deceptively affect the risk assumed by the coverage. This is somewhat persuasive that the policy's notice complies with the legislative intent of MCL 500.3009(2). *Cruz v State Farm Mutual Auto Insurance Company*, 241 Mich App 159, 167; 614 NW2d 689 (2000). I.e., "responsible" is synonymous with "liable."[2]

Consequently, since Mr. Smith was driving the vehicle in knowing defiance of that exclusion and was the cause of the accident at issue, there is no insurance coverage under Progressive's policy. So, although my analysis is somewhat different from that of the trial court, I believe the trial court reached the correct conclusion and properly granted Progressive's motion for summary disposition.

I would affirm the judgment of the trial court.

---

[2] Letter from Progressive's attorney Kerr L. Moyer to the trial court dated August 4, 2008.