# STATE OF MICHIGAN

# COURT OF APPEALS

PHILLIPS-JOHNSON PROPERTIES, LLC,

Plaintiff-Appellant,

v

TRU FITNESS STUDIOS, LLC; a
Michigan limited liability company;
TRUFIT FITNESS, LLC; a Michigan
limited liability company; TRUFIT
FITNESS OF SOUTH LYON; TYLER
KORONICH; and KEVIN LANKFORD,

Defendant-Appellees.

UNPUBLISHED
February 9, 2016

No. 325570
Livingston Circuit Court
LC No. 14-27917-CB

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's December 19, 2014 order dismissing plaintiff's case with prejudice and awarding attorney fees to defendants.[1]  The order was entered following the trial court's grant of summary disposition to defendants on September 23, 2014 and after hearings on attorney fees held on October 28, 2014 and November 20, 2014.  We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of the breach of a commercial lease.  Defendant Tru Fit Fitness Studios, LLC ("Tru Fit I") leased space from plaintiff to operate a commercial gym.  The lease term commenced on February 1, 2013 and ended on April 30, 2014.  Defendant Tyler Koronich was Tru Fit I's sole shareholder and manager.  Koronich signed the lease on behalf of Tru Fit I, but did not execute a personal guarantee.  The lease granted plaintiff a security interest in certain property under the Uniform Commercial Code (UCC).

---

[1] Two defendants initially named in plaintiff's complaint, Tru Fit South Lyon, LLC and Steve Avey, were dismissed by stipulation of the parties and are not parties to this appeal.

-1-

Tru Fit I almost immediately began to fall behind on rent payments. In May 2013, defendant Kevin Lankford paid $2,800 for back rent to plaintiff via personal check. In July 2013, plaintiff received a letter from an attorney representing Tru Fit I stating that the LLC had been dissolved, and informing plaintiff of its right to make a claim against the LLC as a creditor. Plaintiff subsequently submitted a claim for unpaid rent in the amount of $21,827.95.

Around the time of the dissolution, Tru Fit Fitness, LLC ("Tru Fit II") was formed; Koronich and Lankford were its two members. On July 19, 2013, Tru Fit II purchased for $300 the website domain name belonging to Tru Fit I. Tru Fit II then leased space near Tru Fit I's former premises and began operating a commercial gym.

Having not received payment on its claim by March 2014, plaintiff filed suit in the trial court, alleging breach of the lease agreement by Tru Fit I and seeking payment of rent and foreclosure of its security interest. Plaintiff alleged that the other defendants were liable for Tru Fit I's unpaid rent under theories of fraud, fraudulent conveyance, unjust enrichment, piercing the corporate veil, successor liability, common law conversion, and tortious interference with contract and business relations.

After discovery, defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10), arguing in part that while Tru Fit I did breach the lease with plaintiff, all claims plaintiff had against Tru Fit I for that breach would be handled during the dissolution process, and that Tru Fit I was willing to pay plaintiff, as Tru Fit I's sole creditor that had filed a claim, $1,655.73, which represented all the remaining assets of Tru Fit I. Defendants further argued that this payment could not have taken place until after a final accounting, which was completed on April 8, 2014, after plaintiff's complaint had been filed. Defendants maintained that plaintiff's allegations against the other defendants were frivolous and lacked any legal basis.

Plaintiff filed a cross-motion for summary disposition pursuant to MCR 2.119(C)(9). Plaintiff's motion contained only a recitation of the facts of the case, some general citations to the law governing summary disposition, and the conclusory statements that this case was "a textbook case of fraud" and that defendants (apart from Tru Fit I, who admitted to breaching the lease) were "wrong" in believing they were not liable to plaintiff.

The trial court held a hearing on both motions on September 23, 2014. At the hearing, defendants' counsel stated that Tru Fit II had purchased the physical assets (gym equipment) of Tru Fit I at 45 cents on the dollar. Defendants' counsel also stated that Tru Fit I could provide payment of the approximately $1,600 remaining in assets now that the final accounting was complete, and that such payment would have occurred regardless of whether plaintiff had filed suit. The trial court denied plaintiff's motion and granted defendants' motion, stating in relevant part:

I'm not naïve to small corporations and LLC's maybe running some things through it that they shouldn't, but that doesn't mean it's a fraud. . . . Had a buddy

one time helped him[2] out with rent. That's not fraud. Even these things combined aren't fraud.

You know and to pierce a corporate veil you can't even show me that – well he had a business account. He followed the laws as it relates to dissolution. Did he find that he was in trouble financially, yes. It wasn't a good business adventure. Did he decide to join in with others in the same type of business? That's not a fraud.

Now that the business that the assets went to the business that he's – he got into forty-five cents on the dollar does that raise some suspicion? A little bit.

But you knew what was happening and you had the right to ask for a receiver and you chose not to. I can't find a material question of fact. Is it a shame that, that your client ends up without rent? Yes, that stinks, but he[3] could have gotten a personal guarantee and that's what you usually do. I don't know why.

So you're trying to pierce it. I get it. But there just isn't anything. I'm granting summary disposition.

The trial court ordered the parties to brief the issue of entitlement to attorney fees and scheduled a future hearing to address that issue.

The initial hearing on attorney fees was held on October 28, 2014. The trial court ultimately awarded attorney fees to defendants on the ground that plaintiff's lawsuit was frivolous, because plaintiff would have paid through the dissolution process regardless of its suit, plaintiff was aware that Tru Fit I had dissolved and that a final accounting was going to be conducted, and there was no basis for holding the other defendants liable for Tru Fit's unpaid rent. After another hearing on the reasonableness of the requested fees, the trial court awarded defendants $5,200 in fees. This appeal followed.

## II. STANDARD OF REVIEW

Although the trial court did not specify under which subrule it was granting summary disposition, it reviewed documents outside the pleadings in making its decision and referred to the lack of a genuine issue of material fact; we thus presume that the grant of summary disposition was pursuant to MCR 2.116(C)(10). See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

We review a trial court's decision on a motion for summary disposition de novo. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under

---

[2] Koronich.

[3] Plaintiff.

MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

We review issues of statutory interpretation de novo. See *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 60; 718 NW2d 784 (2006).

## III. BREACH OF CONTRACT

Plaintiff first argues that, even if it could not pierce the corporate veil of Tru Fit I or hold any of the other defendants liable for the unpaid rent, it was entitled to a judgment as a matter of law against Tru Fit I on its breach of contract claim, and thus the trial court erred in dismissing its suit in its entirety. We agree.

The elements a plaintiff must prove for a breach of contract claim are: (1) the existence of a contract, (2) a party's breach of that contract, and (3) damages suffered as a result of that breach. *Miller-Davis Co v Ahrens Const, Inc (On Remand)*, 296 Mich App 56, 71; 817 NW2d 609 (2012). Here, there is no dispute that a lease agreement existed between the parties, and that Tru Fit I did not pay the rent it owed under the agreement. Plaintiff also presented evidence of damages in the form of unpaid rent in the amount of $21,827.95. Defendants argued, and the trial court found, that plaintiff could not demonstrate damages because Tru Fit I was willing and able to distribute its remaining assets to plaintiff as its sole creditor. We disagree that MCL 450.4808 bars plaintiff's claim. MCL 450.4808 provides in relevant part:

> (1) Upon the winding up of a limited liability company, the assets shall be distributed in the following order:
>
> (a) *To creditors*, including members who are creditors, to the extent permitted by law, *in satisfaction of liabilities of the limited liability company* other than liabilities for distributions to members under Section 304 or 305.[4]

Although defendants argue that plaintiff's suit represents a "double dip" because plaintiff would only be entitled to collect the remaining assets from Tru Fit I, such an issue relates to partial collectability, not to plaintiff's entitlement to a judgment. See *Berger v Weber*, 411 Mich

---

[4] These sections deal with distributions which members of an LLC are entitled to receive before dissolution or withdrawal, and are not applicable to the instant case.

1, 41 n 59; 303 NW2d 424 (1981) ("A court does not ordinarily concern itself with the collectability of a judgment in deciding whether liability should be imposed upon a wrongdoer.")

Further, nothing in MCL 450.4808, or other portions of the Michigan Limited Liability Company Act, 450.4101 et seq., affirmatively bars plaintiff's claim for breach of contract because Tru Fit I was dissolved and a claim for its assets was made. In fact, MCL 450.4805(3) expressly provides that "[a] dissolved limited liability company may sue and be sued . . . in the same manner as if dissolution had not occurred." And MCL 450.4806(3) provides for circumstances in which a claim against a dissolved LLC is barred:

> (3) A claim against the dissolved limited liability company is barred if either of the following applies:
>
> (a) If a claimant who was given written notice under subsection (1) does not deliver the claim to the dissolved limited liability company by the deadline.
>
> (b) If a claimant whose claim was rejected by a written notice of rejection by the dissolved limited liability company does not commence a proceeding to enforce the claim within 90 days after the effective date of the written notice of rejection.

Neither of these circumstances is present here, and the fact that the Legislature has spoken to situations in which a claim against a dissolved LLC will be barred supports the inference that claims not meeting these criteria are not barred. See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). And MCL 450.4806 specifically contemplates the commencement of proceedings to enforce a claim. Here, plaintiff's claim was not barred by either of the provisions of MCL 450.4806, and plaintiff proved (indeed, Tru Fit I conceded to) all of the elements of a breach of contract claim. That it may not be able to collect fully on its judgment did not mean it was not entitled to such a judgment. The trial court therefore erred in dismissing plaintiff's claim for breach of contract; in fact, plaintiff was entitled to summary disposition on this claim in light of Tru Fit I's admissions. We therefore reverse the trial court's grant of summary disposition in favor of defendants on plaintiff's breach of contract claim, and remand for entry of summary disposition in favor of plaintiff on that claim.

## IV. DISTRIBUTIONS TO KORONICH

Plaintiff next claims that the trial court erred in dismissing its claims[5] against Koronich, because Koronich was liable for distributions made from Tru Fit I that caused it be undercapitalized in violation of MCL 450.4307, and because Koronich is liable for these distributions under MCL 450.4308(1). Plaintiff supports this claim principally by making reference to balance sheet indicating Tru Fit I's assets, liabilities, and equity as of December 31, 2013. Plaintiff argues that this balance sheet shows over $7,000 of cash distributions to

---

[5] Although plaintiff does not make this explicit, presumably this argument relates to plaintiff's piercing the corporate veil and fraud claims against Koronich, as they involve only Koronich's conduct in his role as sole shareholder of Tru Fit I.

Koronich. While the balance sheet was provided to the trial court by Tru Fit I and Koronich in answering plaintiff's complaint, plaintiff never argued before the trial court that Koronich had caused Tru Fit I to become undercapitalized through these distributions. We therefore decline to address this issue for the first time on appeal, and affirm the trial court's grant of summary disposition with respect to claims against Koronich. See *Vushaj v Farm Bureau Gen Ins Co*, 284 Mich App 513, 519; 773 NW2d 758 (2009).[6]

## V. SUCCESSOR LIABILITY

Plaintiff further argues that the trial court erred in determining that no genuine issue of material fact existed regarding the successor liability of Tru Fit II. We agree.

> The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The five exceptions are as follows:
>
> (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation." [*Lakeview Commons v Empower Yourself*, 290 Mich App 503, 507; 802 NW2d 712, quoting *Foster Cone-Blanchard Machine Co*, 460 Mich 696, 702; 597 NW2d 506 (1999) (quotation marks and citation omitted).]

Although more traditionally applied in the context of torts, successor liability may apply to LLCs in "purely commercial contexts, such as a breach of a lease agreement." *Lakeview Commons*, 290 Mich App at 508, citing *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 717-719; 762 NW2d 506 (2008).

Here, plaintiff argues both that the transaction between Tru Fit I and Tru Fit II was fraudulent and that Tru Fit II is a mere continuation of Tru Fit I. With regard to the claim that the transaction was fraudulent, plaintiff asserts again that Koronich caused Tru Fit I to make

---

[6] Although this Court may disregard issue preservation requirements upon occasion, *Duffy v Dep't of Natural Resources*, 490 Mich 198, 209 n 3; 805 NW2d 399 (2011), here, we lack the necessary facts to determine this issue as it went unbriefed and unargued below. Plaintiff's citation to *Florence Cement Co v Vettriano*, 292 Mich App 461; 807 NW2d 917 (2011) is distinguishable on this basis, as in that case a bench trial was held on the issue of undercapitalization.

distributions to him causing it to be undercapitalized, which is irrelevant to the issue of whether the sale of assets to Tru Fit II was fraudulent. Regarding that sale, defendants provided the trial court with affidavits from Tru Fit I's accountant indicating that he had valued the physical assets of Tru Fit I after consulting an unrelated retailer of used sports equipment, and that the intangible assets of Tru Fit I were valued, and purchased, at $300.00. Plaintiff provides no evidence to indicate that the transfer of assets between the two LLCs was fraudulent. Although plaintiff refers to allegedly improper ATM withdrawals and checks written by Koronich during the operation period of Tru Fit I, such allegations are irrelevant to this issue, which concerns the nature of the transaction between the two LLCs. *Id.* at 507.

Regarding the "mere continuation" doctrine, "a prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation." *Id.* at 507 (citation omitted). Further, an additional relevant consideration is "whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation." *Id.* at 508 (citation omitted).

In *Lakeview Commons*, this Court found that a question of fact existed regarding successor liability based on several factors:

> In looking at the record in the light most favorable to plaintiff, there was a genuine issue of material fact regarding whether Hamsa was the mere continuation of Empower. Empower ceased operations in August 2007, the same month in which Hamsa was created. Both Empower and Hamsa were in the business of health, fitness, personal training, and yoga. Empower and Hamsa served the same geographic area, Oakland County. Empower and Hamsa operated in the same manner. Both provided a venue for independent-contractor yoga teachers to teach classes to students. Phyllis owned 80 percent and Troy owned 20 percent of both Empower and Hamsa. Phyllis was the president and managing member of both Empower and Hamsa, and Troy was the vice president and registered agent of both Empower and Hamsa. Troy also signed the annual reports and prepared the tax returns for both Empower and Hamsa. Empower and Hamsa did not keep a corporate minute book or an operating agreement. Both held informal meetings and did not keep minutes from the informal meetings. Neither Empower nor Hamsa distributed earnings to its members. Troy and Phyllis were signatories on both Empower's and Hamsa's bank accounts. Empower's business telephone number became Hamsa's business telephone number. Empower had a website from 2004 until 2007. Then, in 2007, Hamsa created a website. Hamsa's website stated that Hamsa was formerly known as Empower and gave details on its new location. Reasonable minds could differ regarding whether Hamsa was the mere continuation of Empower. Therefore, the record provided raised a genuine issue of material fact regarding whether Hamsa was merely a continuation of Empower. [*Id.* at 509.]

-7-

Many of these factors are present in the instant case. Both Tru Fit I and Tru Fit II are commercial gyms that operate in the same geographical area in the same business. Tru Fit II purchased Tru Fit I's website and equipment. Koronich possessed a majority of the ownership interest of both LLCs (100% of Tru Fit I and 60% of Tru Fit II). There was a post made on Tru Fit I's Facebook page indicating that the business was moving to a new location that made no mention of a change in ownership or even a change in the business name; in fact, the post indicated that Tru Fit had outgrown its space and had to move to a bigger location. This post also suggests that persons who had purchased a membership in Tru Fit I's commercial gym either had their memberships transferred to Tru Fit II or were sought out as members by Tru Fit II. However, there are differences between *Lakeview Commons* and the instant case. Most notable is the fact that Lankford is the managing member of Tru Fit II, while Koronich is only listed as a member; Koronich was president and sole shareholder of Tru Fit I. Lankford also contributed the majority of the initial capital for Tru Fit II. But Lankford had also made some rent payments on behalf of Tru Fit I, indicating some involvement with that business even if it was just as a creditor. Further, changes in management roles and personnel do not automatically defeat a claim for successor liability. See *RDM Holdings, LTD*, 281 Mich App at 718 n 20. Viewed in the light most favorable to the plaintiff, we conclude that it established a prima facie case for successor liability under the "mere continuation" doctrine, and that the trial court erred in granting summary disposition to Tru Fit II on this claim. *Lakeview Commons*, 290 Mich App at 509. Accordingly, we vacate the trial court's grant of summary disposition in favor of defendants with respect to successor liability, and remand for further proceedings.

## V. FRIVOLOUSNESS

Finally, plaintiff argues that the trial court erred in awarding attorney fees on the ground that its lawsuit was frivolous. We agree.

We review for clear error a trial court's findings with regard to whether a claim or defense was frivolous. See *Kitchen v Kitchen*, 465 Mich 654, 661–662; 641 NW2d 245 (2002). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*.

MCR 2.625(A)(2) provides that "if the court finds . . . an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) provides that if a claim or defense is found to be frivolous "the court . . . shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney." Pursuant to MCL 600.2591, a claim is frivolous if one of the following conditions is met:

> (i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

> (ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

> (iii) The party's legal position was devoid of arguable legal merit.

Defendants concede that plaintiff did not initiate its action to harass, embarrass, or injure them. The trial court concluded that plaintiff's claims lacked legal merit. As stated above, we hold that the trial court erred in dismissing plaintiff's breach of contract claim; such a claim obviously possesses merit.

With regard to its remaining claims, many of them were never briefed or argued before the trial court. For example, plaintiff presented no evidence or authority in support of its claims for statutory conversion or tortious interference with contract and business relations; nor did plaintiff present any evidence in support of its UCC foreclosure claim or common law claim-and-delivery claim for possession of tangible assets of Tru Fit I. Further, several of plaintiff's claims were improperly pled. For example, unjust enrichment requires a benefit to be conferred on a defendant by a plaintiff. *Barber v SMH (US), Inc*, 202 Mich App 366, 375; 509 NW2d 791 (1993). Here, it is undisputed that only Tru Fit I received a benefit from plaintiff, and that by virtue of an express contract, which precludes the application of the doctrine of unjust enrichment. *Id*. The remaining defendants' liability for a benefit received by Tru Fit I is properly addressed through a piercing the corporate veil theory, not unjust enrichment. Plaintiff also provided no evidence that Tru Fit I or any defendant fraudulently represented that plaintiff would be paid under the lease at the time the agreement was made; indeed many portions of plaintiff's complaint ostensibly related to fraud in fact relate to successor liability.

With regard to plaintiff's piercing the corporate veil and successor liability theories, plaintiff did present some evidence in support of these theories, in the form of allegedly improper transactions from Koronich, the purchase of Tru Fit I's assets by Tru Fit II, and evidence supporting its allegation that Tru Fit II was a mere continuation of Tru Fit I; as noted, we hold that a genuine issue of material fact exists concerning the successor liability of Tru Fit II.

On balance, therefore, we are left with the definite and form conviction that a mistake was made in awarding attorney fees. *Kitchen*, 465 Mich at 661–662. Although some of plaintiff's claims do appear devoid of legal merit, the majority of the proceedings were occupied with plaintiff's meritorious claims, although some were ultimately unsuccessful. The trial court's finding of frivolousness appeared principally motivated by its belief that the breach of contract claim was frivolous in light of plaintiff's claim under the dissolution, which we have found erroneous. We therefore reverse the trial court's award of attorney fees. Each party shall bear its own attorney fees in this matter.

Affirmed in part, reversed in part, vacated in part, and remanded for further proceedings. Neither party having prevailed in full, no party may tax costs. MCR 7.219(A). We do not retain jurisdiction.


/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray